HENRY WAYMAN AND LARKIN SHIPLEY,
vs
RICHARD G. STOCKETT.

} JULY TERM, 1847.

[LIABILITY OF TRUSTEES—CHANCERY PRACTICE.]

A TRUSTEE for the investment of certain trust funds, for the benefit of certain *cestui que trusts*, paid a portion of the trust money into the Court of Chancery under its sanction, which remained there for some time uninvested. HELD—that he was not responsible for interest on the sums so paid into court for the time during which they remained uninvested.

Upon petition of a *cestui que trust*, the Chancellor passed an order directing certain mortgages belonging to the trust estate to "be forthwith closed," and that the *cestui que trust* "have leave to cause a suit or suits to be instituted for that purpose, in the names of the trustees, in such manner as may be most proper, necessary and beneficial to him." HELD—

That under this order, the *cestui que trust* might file a bill to foreclose a mortgage executed by one of the trustees to the trust estate, and was not confined to a proceeding by way of petition in the original cause.

[By the will of Larkin Shipley, executed in 1822, the testator devised the residue of his estate, real and personal, to Richard G. Stockett and Henry Wayman, in trust for his nephew, Larkin Shipley, for and during the term of his natural life, and if he should die without issue of his body lawfully begotten, then the property to be equally divided among his brothers and sisters, but if he should have lawful issue of his body at the time of his death, then to such issue share and share alike. The testator then directed the said trustees "to retain the sole possession and custody of the said estate, for the purpose of educating his said nephew, and to rent out the real estate, and put out the money on interest to the best advantage, and pay away the yearly proceeds, after his arrival at age, to him, but to retain a

control over the principal till the objects of this bequest and devise are fully complied with."

The will also contained a legacy of $7,000 in favor of the testator's niece, Anne Shipley, the annual interest whereof was to be paid to her during her natural life, the principal after her death to be divided among her children, but if she should die without leaving lawful issue then over, the said trustees to retain in their hands the principal, and put the same out at interest or good security for the purposes aforesaid. The said trustees were also appointed executors of the will.

Various proceedings in equity arose under this will, which are particularly reported in the case of Jones, who married the legatee, Ann Shipley, against Stockett, 2 *Bland*, 409 to 436, and the *Farmers and Mechanics Bank* vs. *Wayman and Stockett*, 5 *Gill*, 336 to 358. By these proceedings, among other things a debt due by Stockett to the testator, Larkin Shipley, and secured by a mortgage to him, executed by Stockett in 1821, was decided to constitute a part of the trust fund, to be held by Wayman and Stockett for the benefit of the testator's nephew, Larkin Shipley, one of the complainants in this case.

On the 8th of July, 1847, the Auditor, at the request of Stockett, made a report and statement of said mortgage debt. By this statement, the Auditor says it appears that there has been paid, over and above the interest on said debt, the sum of $875 72, of which there was paid into court on the 1st of March, 1845, $388 23, on the 21st of January, 1846, $24 14, and on the 20th of May, 1846, $422 27, the residue having been paid in small amounts at different times. These sums were paid into court without the consent of the *cestui que trust*, but with the approbation of the court, and it is submitted whether the said Stockett, being one of the joint trustees, whose duty it was to make an immediate investment, is not answerable for interest upon the same from the time they were severally deposited in court until they shall have been invested. That there is still due on the mortgage the sum of $981 67.

Previous to this statement and report of the Auditor, to wit, on the 29th of July, 1846, the Chancellor *(Bland)* had, upon

the petition of the complainant, Shipley, for that purpose, passed the following order :

"The petition of Larkin Shipley, filed on the 10th instant, standing for hearing on this day, and no cause having been shown to the contrary, according to the order passed on the said 10th instant, it is ordered that the said mortgages in the said petition mentioned, be forthwith closed, and that the said Larkin Shipley have leave to cause a suit or suits to be instituted for that purpose in the names of the said trustees, in such manner as may be most proper, necessary, and beneficial to him, and it is further ordered, that the said trustees proceed forthwith to invest the moneys now in court, so far as the same may be principal, in the public stock of the corporation of the city of Baltimore, the said stock to stand in their names, as trustees, but in such a manner that the said Larkin Shipley may, during his life, receive the interest or dividends thereon directly from the proper officer of the said corporation, without his having in any manner the control of the said stock, provided it can be so entered on the books of the said corporation, and if the entry cannot be so made, the said trustees are hereby directed to leave with the proper officer a general authority for the said Larkin to receive the said dividends or interest during his life, and the said trustees shall bring into this court the certificates of the said stock, there to remain until further order."

An original bill was then filed by Shipley and Wayman against Stockett, for the foreclosure of the mortgage executed by him to the testator, Larkin Shipley, deceased. Previous, however, to action on this bill, the Chancellor, (Johnson,) on the 27th of July, 1847, delivered the following opinion upon exceptions filed by Stockett to the Auditor's report, of the 8th of July, 1847.]

THE CHANCELLOR :

In this case, exceptions having been filed to the report of the Auditor of the 8th of July last, by Richard G. Stockett, and the same having been argued by the counsel of the parties, they have received due consideration from the Chancellor. Those

exceptions raise the question of the liability of the said Stockett for interest on the several sums paid by him into court, under its sanction, whilst they have remained uninvested.

Looking to the decision of the late Chancellor, in *Jones* vs. *Stockett,* 2 *Bland,* 424, 425, and to the circumstances under which the payments were made, I do not think that Richard G. Stockett should be charged with interest as suggested by the Auditor.

It is understood that no decision is expected at this time in regard to the credit claimed by Stockett for payments on account of fees and taxes.

A question was also presented, and the opinion of the court asked, with respect to the costs which may have accrued upon the proceedings instituted by Larkin Shipley, under the order of the 29th of July, 1846. It is my opinion, that inasmuch as these proceedings were expressly authorized by the said order, the party for whose benefit they were instituted will, if they prove successful, be entitled to his costs, as is usual in other cases. The opinion of the court upon the last question is expressed only because the solicitors on both sides asked for it.

[With reference to the bill for the foreclosure of the mortgage, the Chancellor, on the 30th of July, 1847, delivered the following opinion.]

THE CHANCELLOR:

This bill is filed for the sale of certain premises which had been mortgaged by the defendant to Larkin Shipley, on or about the 18th of September, 1821, for the purpose of securing the payment of a sum of money therein mentioned.

This debt, by certain proceedings in the Court of Chancery, described in the bill, became and was constituted a part of the trust fund, to be held by Wayman, one of the present plaintiffs, and the defendant, Stockett, in trust for the complainant, Shipley, for life, with remainder to the persons mentioned in the proceedings. It appears by the Auditor's report of the 8th of July, 1847, that divers sums for interest and principal have

been paid by Stockett on account of this debt, reducing it as of the date of the said report to $981 67. It also appears by an order of the late Chancellor, passed on the 29th of July, 1846, upon the petition of the complainant, Shipley, praying that proceedings might be instituted for the foreclosure of this mortgage, amongst others that authority was given for that purpose. The language of the order is, "that the said mortgages in the said petition mentioned, be forthwith closed, and that the said Larkin Shipley have leave to cause a suit or suits to be instituted for that purpose in the names of the trustees, in such manner as may be most proper, necessary and beneficial to him."

The bill was filed under this order, but the answer of Stockett insists that the proceeding against him should have been by petition in the original cause, and not by bill for foreclosure and sale of the mortgaged premises. This objection, I think, is answered by the order of July, 1846, which expressly authorizes the party to proceed by suit, or suits, as may be most beneficial to him. I cannot think the Chancellor intended to confine the plaintiff to a proceeding by way of petition in the original cause.

In an account marked II., filed on the 22d of January, 1838, and ratified on the 24th of the same month, the defendant, Stockett, was allowed a commission of six per cent. on the amount accounted for by him. There is not, in my opinion, any thing in his conduct since then, which should deprive him of a commission at the same rate on the payments made by him since.

The proceedings in the original cause of Jones and wife against Wayman and Stockett, being, by agreement of counsel, referred to as evidence in this cause, it is thought the sum now due on the mortgage of Stockett may be readily ascertained by correcting his accounts filed on the 12th of this month, by crediting him with commissions on the payments made by him since the former account. Upon ascertaining the precise amount due from him, the Chancellor will pass a decree for the sale of the mortgaged premises, unless the said Stockett shall pay the sum so due, with interest and costs, within nine months from the

date of the decree. The Chancellor thinks, the defendant under all the circumstances, was warranted in supposing the fund in his hands would not be abruptly withdrawn from him, and it is for this reason that he is disposed to give him a reasonable time to pay the debt.

[The trustees having invested a part of the trust fund as directed, brought the certificates of stock into court, and upon the suggesting of counsel as to their safe keeping, the Chancellor, on the 4th of August, 1847, passed the following order.]

THE CHANCELLOR:

It having been suggested in this case, that the security of parties requires that some place of safety be provided for the custody of moneyed securities invested under the orders of the Court of Chancery, or placed under its control, and the Chancellor concurring in the propriety of this suggestion; it is, thereupon, ordered, that all such securities be placed by the Register in the Farmers Bank of Maryland, and that for that purpose, he procure a trunk, or box, properly labelled, in which such securities shall be put, and then deposited as aforesaid, in the said bank. And that the register shall so designate and mark the several and respective securities, by endorsement on the envelopes, or otherwise, as to show the cases to which they belong.

McLEAN, for Complainants.
ALEXANDER, for Defendant.